**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

KEYA TURNER                                                                                          PLAINTIFF

v.                                              No. 3:15CV00093 JLH

CITY OF WEST MEMPHIS                                                                      DEFENDANT

**OPINION AND ORDER**

This is a sexual harassment case. Keya Turner brings suit against her employer, the City of West Memphis, alleging claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964[1] and the Arkansas Civil Rights Act of 1993.[2] Turner has worked for the City's Sanitation Department as a driver since 2011. Turner alleges that the Sanitation Superintendent, Leroy Turner ("L.T."),[3] engaged in inappropriate conduct that rose to the level of discrimination based on sex and created a hostile work environment. She claims that the City is vicariously liable for L.T.'s unlawful conduct because he was a supervisor. The City has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For summary judgment purposes, the City does not dispute Turner's sexual harassment allegations, but maintains that it is entitled to the *Ellerth-Faragher* affirmative defense. For the following reasons, the motion is granted in part and denied in part.

---

[1] 42 U.S.C. § 2000e-2(a)(1).

[2] Turner's claim arising under Arkansas law is evaluated in the same manner as her Title VII claim. *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007). The Arkansas Civil Rights Act is codified at Ark. Code Ann. § 16-123-101, *et. seq*.

[3] The parties refer to Leroy Turner as "L.T." to avoid confusion. The Court will as well.

**I.**

The Court presents the facts in a light most favorable to Turner, the non-moving party. Turner began working for the Sanitation Department in October 2011. L.T. has served as the City's Sanitation Superintendent throughout Turner's employment. According to Turner, L.T. began regularly directing sexual comments toward her shortly after she started working for the City. Turner also alleges that L.T. kissed her on the lips and sat in her lap on several occasions. Turner testified in her deposition that L.T. kissed her in March 2012, sat on her lap in May 2012, and sat on her lap two more times in May 2014. L.T. admits that he sat in her lap in jest when no seats were available but denies all allegations of inappropriate behavior.

Turner told the Sanitation Foreman, Arthur Jackson, about L.T.'s conduct in 2012,[4] but Jackson did not report that information along to anyone. Rather, Jackson advised Turner to go to human resources. Dewayne Douglas was the City's Human Resources Director at that time. Douglas was not aware of Turner's complaints until she filed a charge with the Equal Employment Opportunity Commission in 2014. The EEOC provided Douglas notice of the charge and he spoke with Turner as part of his investigation. Douglas encouraged Turner to report any further harassment and provided her a copy of the no-harassment guidelines.[5] Turner initialed the guidelines, and Douglas directed L.T. and Turner to cease all communication. Furthermore, Douglas told Jackson to serve as Turner's sole supervisor, so that she would not have to report to

---

[4] Turner and Jackson provide different accounts of their conversation but both agree that Turner reported to Jackson that L.T. had engaged in inappropriate behavior toward her.

[5] The guidelines support the City's written policy. Document #25-5 at 38.

L.T. The parties agree that L.T. and Turner did indeed stop communicating, though Turner claims that he continued to follow in a separate truck as she completed her routes.

The parties agree that the City has a written policy that prohibits sexual harassment and provides a way for employees to report allegations of sexual harassment. The policy states:

> A. An employee should report harassment or suspected harassment immediately to the department head. If the department head is the alleged harasser, then the complaint should be reported to the supervisor in the chain of command. This complaint should be made in writing.
>
> B. Anytime an employee has knowledge of harassment he/she shall inform the department head in writing.
>
> C. Each complaint shall be fully investigated and a determination of the facts and an appropriate response will be made on a case-by-case basis.

Document #25-4 at 82. It is undisputed that Turner did not report the sexual harassment in writing. It is also undisputed that Turner did not report her complaint to L.T.'s supervisor Phillip Sorrell, the Director of Public Works,[6] but, as noted, she reported the alleged harassment to Jackson, the Sanitation Foreman.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd.* v.

---

[6] L.T. testified in his deposition that Sorrell was the City Engineer, but admitted that Sorrell was his supervisor. Document #25-2 at 12.

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record.  *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013).  If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law.  *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

**III.**

The City insists that it should not be held vicariously liable for any unlawful conduct on the part of L.T. because it discharged its duty to prevent and correct sexual harassment and because Turner did not discharge her duty to alert the City that she was subjected to sexual harassment.  Turner insists that the City is not entitled to judgment as a matter of law because she reported the harassment to Jackson, who was an individual designated to receive complaints, and the City was required to correct the sexual harassment once Turner complained to Jackson.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment that creates a hostile work environment constitutes discrimination based on sex.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).

Because it is undisputed that L.T. had supervisory authority over Turner, the City is vicariously liable for L.T.'s harassment of Turner unless it shows that it is entitled to the *Ellerth-Faragher* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293, 141 L. Ed. 2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998). The *Ellerth-Faragher* affirmative defense is potentially applicable when, as in this case, no tangible employment action was taken. *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2770 ("When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages . . ."). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. The Eighth Circuit explained the rationale supporting each part of the *Ellerth-Faragher* defense:

> The first part of this defense furthers Title VII's 'primary objective' of avoiding harm by 'recogniz[ing] the employer's affirmative obligation to prevent violations and giv[ing] credit . . . to employers who make reasonable efforts to discharge their duty." *Faragher*, 524 U.S. at 806, 118 S. Ct. 2275. The second part 'reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute.' *Id*.

*Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012). The Court need not address the second element of the defense because the City has failed to demonstrate that no genuine dispute of material fact exists as to whether it promptly corrected any sexually harassing behavior.

The first element of the defense has two prongs: the "prevention" prong and the "correction" prong. *See Phillips v. Taco Bell Corp.*, 156 F.3d 884, 889 (8th Cir. 1998). First, the employer must

show that it exercised reasonable care to prevent harassment. *Weger v. City of Ladue*, 500 F.3d 710, 719 (8th Cir. 2007). The distribution of a valid anti-harassment policy is compelling proof that an employer exercised such care. *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1145 (8th Cir. 2007). Turner does not argue that the City failed to exercise reasonable care to prevent harassment, nor does she dispute the effectiveness of the City's written anti-harassment policy. Document #30 at 8. Second, "[u]nder the correction prong, the employer must have promptly corrected any sexual harassment that occurred." *Brenneman*, 507 F.3d at 1145. The correction prong is at the heart of the parties' dispute in this case, because in applying the correction prong "the employer's notice of the harassment is of paramount importance." *Weger*, 500 F.3d at 720 (quoting *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1299 (11th Cir. 2000)). "Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment." *Id.* (quoting *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001)). It is undisputed that the City took no action to correct the sexually harassing behavior until 2014, when Douglas learned about Turner's EEOC complaint. Therefore, the City's liability for L.T.'s unlawful conduct hinges on when the City's duty to correct that conduct was triggered.

Turner maintains that she triggered the City's duty to take prompt corrective action when she told Jackson about the sexual harassment sometime in 2012. Turner said: "I told [Jackson] about 2012 that [L.T.] had asked me for a hug. He had kissed me, and he got to telling me some other stuff, but I had made [Jackson] aware." Document #25-5 at 6. Turner refers to Jackson as her "manager." *Id.* According to Jackson, he learned about Turner's allegations when he was present for a discussion between L.T. and Turner shortly after the harassment occurred. Document #25-7

at 15. During that discussion, Turner reviewed with L.T. his conduct–he sat in her lap and kissed her in the front office. *Id*. Afterward, Turner asked Jackson what she should do and he advised her to talk with Douglas in human resources. *Id*. Jackson admitted that he was supposed to report Turner's allegations to human resources but he chose not to do so. *Id*. at 17. Turner did not complain to Jackson about the incidents that occurred later in 2014. Document #25-5 at 6.

An employer's duty promptly to engage in corrective action is not triggered by informal, ambiguous comments to a supervisor. *See Crawford*, 665 F.3d at 984. Neither is it triggered by the mere observation of harassment by a supervisor, even if the policy requires employees who observe harassment to report it. *See Weger*, 500 F.3d at 721. This is because "where an employer has a complaint procedure delineating the individuals to whom notice of harassment must be given, actual notice is established when the employee notifies those individuals." *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (internal quotations omitted). The City's complaint procedure delineates the department head as the individual to whom notice of harassment must be given, unless the department head is the alleged harasser. Document #25-4 at 82. Then, notice of harassment must be given "to the supervisor in the chain of command." *Id*. And the complaint "should be made in writing." *Id*.

The City maintains that Sorrell was the "department head" to whom the policy required Turner to report. Document #12 at 12; Document #31. Turner maintains that L.T. was the "department head" and that Jackson was "the supervisor in the chain of command." Document #30 at 11. It is undisputed that Turner failed to complain in writing, but this failure, standing alone, is not dispositive at the summary judgment stage of the pertinent question in the second prong of the first element–when the City had a duty to take corrective measures. *See Stewart v. Rise, Inc.*, 791

F.3d 849, 859 (8th Cir. 2015). A reasonable jury could conclude that Jackson was "the supervisor in the chain of command," so that Turner's report to him triggered the City's duty to take prompt corrective action. Therefore, the City's motion for summary judgment on Turner's sexual harassment claim must be denied.

### IV.

As noted, Turner also has asserted a claim against the City of West Memphis for retaliation. She has conceded in response to the City's motion for summary judgment that the City is entitled to judgment as a matter of law on her retaliation claims under Title VII and the Arkansas Civil Rights Act. Therefore, the City's motion for summary judgment is granted as to Turner's claims of retaliation.

### CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #25. The City's motion is granted as to Turner's retaliation claims but denied as to her sexual harassment claims.

IT IS SO ORDERED this 29th day of August, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE